STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-18-420

JIM HODGE, et al.,

Plaintiffs

v.

ORDER

MAINE SCHOOL ADMINISTRATIVE
DISTRICT 6,

REC'D CUMB CLERKS OF
MAY 20 '19 PM2:58

Defendant

Before the court is a motion to dismiss filed by defendant Maine School Administrative District 6.

This case is part of a two decades-long dispute relating to the Town of Frye Island's attempt to withdraw from MSAD 6. This dispute centers on emergency legislation enacted in 2001 (P. & S.L. 2001 ch. 8, also referred to as "L.D. 500"), which states that Frye Island may not withdraw from MSAD 6 unless authorized by further action by the Legislature.

L.D. 500 was challenged previously in litigation that culminated in the Law Court's 2008 decision in *Town of Frye Island v. State*, 2008 ME 27, 940 A.2d 1065, although the Law Court found that the issues with respect to L.D. 500 were moot at that time. L.D. 500 is now also being challenged in a pending lawsuit between MSAD 6 and the Town of Frye Island in which the plaintiffs in this action have intervened. *MSAD 6 v. Town of Frye Island*, CV-18-008 (Superior Court Cumberland County). In that case the court recently granted summary judgment to MSAD 6.

In this action plaintiffs Jim Hodge and Ed Rogers allege that L.D. 500 violates equal protection, due process, the Emergency Legislation clause of the Maine Constitution, the right to petition government for redress of grievances, and the right to Equal Taxation under the Maine Constitution.

**Plaintiffs–Catherine Connors, Esq.**
**Defendant–Melissa Hewey, Esq.**

Specifically, Hodge and Rogers allege they are residents, taxpayers, and registered voters of the Town of Frye Island. Complaint ¶¶ 1-2.[1] Frye Island is a seasonal community with approximately 1500 seasonal and weekend residents and approximately 160 registered voters. *Id.* ¶¶ 7, 9. Frye Island shuts down each winter from November 1 to April 1, suspending ferry service, draining the public water supply, and closing the island roads. *Id.* ¶¶ 23-24.[2]

According to the complaint, Frye Island has no school age children who reside on the island during the school year and no residents of the island attend MSAD 6 schools. *Id.* ¶¶ 31-32. Hodge and Rogers allege that Frye Island made an annual contribution of approximately $1.5 million to MSAD 6 in each of the years 2015, 2016, and 2017 and received no services for that contribution. *Id.* ¶¶ 38-40.

Hodge and Rogers allege that they are injured by L.D. 500 because a portion of their taxes go to MSAD 6, and L.D. 500 denies Frye Island the ability to withdraw from MSAD 6 and thereby relieve Frye Island residents from contributing to MSAD 6's finances. *Id.* ¶ 50.

Legal Standard

For purposes of a motion to dismiss, the material allegations of the complaint must be taken as admitted. *Ramsey v. Baxter Title Co.*, 2012 ME 113 ¶ 2, 54 A.3d 710. The complaint must be read in the light most favorable to the plaintiffs to determine if it sets forth elements of a cause of action or alleges facts that would entitle plaintiffs to relief pursuant to some legal theory. *Bisson v. Hannaford Bros. Co., Inc.*, 2006 ME 131 ¶ 2, 909 A.2d 1010. Dismissal is appropriate only when it appears beyond doubt that the plaintiffs are not entitled to relief under any set of facts that they might prove in support of their claim. *Moody v. State Liquor & Lottery Commission*, 2004 ME 20 ¶ 7, 843 A.2d 43. However, the plaintiffs may not proceed if the complaint fails to allege essential elements of the cause of action. *See Potter, Prescott, Jamieson & Nelson P.A. v. Campbell*, 1998 ME 70 ¶¶ 6-7, 708 A.2d 283.

---

[1] Both live elsewhere in Maine during the winter months (November 1 to April 1). *Id.*

[2] During the winter Frye Island town government operates from an office in Raymond.

2

In considering a motion to dismiss, the court can consider official public documents and documents that are central to plaintiffs' claim without converting a motion to dismiss into a motion for summary judgment. *Moody v. State Liquor & Lottery Commission*, 2004 ME 20 ¶¶ 9-10. In this case, therefore, the court can consider the text and provisions of L.D. 500 although L.D. 500 is nowhere quoted in the complaint.

On the pending motion MSAD 6 challenges the standing of Hodge and Rogers to pursue this action and the sufficiency of the factual allegations supporting their complaint.


Taxpayer Standing

Taxpayer standing in cases brought against units of local government appears to depend on whether the taxpayers are seeking preventive or remedial relief and, if remedial relief is sought, whether the taxpayers have demonstrated particularized injury. *See Petrin v. Town of Scarborough*, 2016 ME 136 ¶ 20, 147 A.3d 842. In this case, however, Hodge and Rogers are not challenging actions by municipal authorities with respect to taxation or apportionment. They are instead challenging a state statute which prevents Frye Island's attempt to withdraw from MSAD 6 and thereby causes a portion of their property taxes to be contributed to an entity from which they receive no services.

With respect to taxpayer standing in cases challenging state governmental action, the Law Court has abandoned the distinction between preventative and remedial relief in cases where taxpayers allege that the State is acting in violation of the Constitution and injuring them by raising their taxes. *Common Cause v. State*, 455 A.2d 1, 9-13 (Me. 1982). Although the State was a named party in *Common Cause* and is not a named party in this case, *Common Cause* involved state action taken pursuant to legislation authorizing a bond issue which was then approved by the voters in a referendum. 455 A.2d at 5. Because Hodge and Rogers are similarly challenging a state statute which they allege raises their taxes, the court sees no reason to apply the preventative vs. remedial distinction in this case.

3

Even if that distinction were to be applied, Hodge and Rogers are seeking a declaratory judgment that L.D. 500 is unconstitutional, which appears to be a form of preventative rather than remedial relief. Accordingly, the court does not have to consider the issue of whether Hodge and Rogers have shown a particularized injury given that the effect of L.D. 500 on their taxes is indirect, rather than direct. On the issue of taxpayer standing, the court concludes that Hodge and Rogers may proceed with this action.

However, as noted below, it appears that in some instances Hodge and Rogers are attempting to assert claims on behalf of the Town of Frye Island rather than on their own behalf, and it is not clear that they have standing to do so. The court will consider those issues in connection with MSAD 6's arguments that each of the claims set forth in the complaint fail to state a claim on which relief may be granted.

As drafted, the complaint consists of one count, generally alleging that L.D. 500 is unconstitutional. However, in the portion of the complaint addressed to the relief requested, Hodge and Rogers are seeking separate declaratory judgments that L.D. 500 (1) violates equal protection, (2) violates due process, (3) violated the Emergency Legislation Clause, (4) violates the right to petition for redress of grievances, and (5) violates plaintiffs' rights under the Equal Taxation clause.

Equal Protection

In support of their equal protection claim, Hodge and Rogers allege that there are other municipalities, similar to Frye Island, that have very few students that they send to the school districts of which they are members but that only Frye Island is statutorily prevented from withdrawing from its school district. Complaint ¶¶ 41-42.[3] MSAD 6 argues with some force that the allegations in the complaint suggest that Frye Island is unique among Maine municipalities in that it essentially shuts down for the winter – which may suggest that there are no similarly

---

[3] MSAD 6 faults Frye Island because it does not name any such municipalities, but for purposes of a motion to dismiss the court is obliged to assume that such municipalities exist.

4

situated towns. However, whether there are any sufficiently similarly situated towns cannot be determined on the face of the complaint.

The problem, as the court sees it, with plaintiffs' equal protection claim is that plaintiffs are alleging that Frye Island is being denied equal protection as compared with other towns. The court is not aware of any authority that residents of a town have standing to assert constitutional claims on behalf of the town.[4] Moreover, relying on the Law Court's 2008 *Frye Island* decision, 2008 ME 27 ¶ 11 n.3, this court has already ruled that Frye Island is not entitled to claim a violation of equal protection. *See MSAD 6 v. Inhabitants of Frye Island*, No. CV-18-008, 2018 Me. Super. LEXIS 112 *2 (June 26, 2018).

To the extent that Hodge and Rogers are arguing that they themselves are being treated differently from similarly situated taxpayers, there are no such allegations in the complaint. Moreover, their situation is not distinguishable from the situation of any other persons who own second homes in Maine and pay property taxes on those homes but do not send their children to schools in the towns where their second homes are located.

Plaintiffs' complaint fails to state a claim for a violation of equal protection.


Substantive Due Process

Plaintiffs' due process claim is based on the allegation – set forth in paragraph B of the request for relief – that L.D. 500 represents "an unduly arbitrary and capricious exercise of legislative power." This is a substantive due process claim.[5]

---

[4] In this context lack of standing relates to whether the equal protection claim as alleged fails to state a claim upon which relief may be granted within the meaning of M.R.Civ.P. 12(b)(6) rather than a lack of standing for justiciability and jurisdictional purposes.

[5] The memoranda of law submitted by the parties also discuss procedural due process. However, no procedural due process claim is alleged in the complaint. Moreover, the procedure for withdrawal from a school district is created by statute, and procedural due process is not violated by legislative changes withdrawing statutory benefits. *See Atkins v. Parker*, 472 U.S. 115, 129-30 (1985), quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432-33 (1982) ("The legislative determination provides all the process that is due").

Substantive due process analysis initially turns on whether the challenged action implicates a fundamental right. *Doe v. Williams*, 2013 ME 24 ¶ 65, 61 A.3d 718. If no fundamental right is implicated, the challenged action will be upheld so long as it is "reasonably related to a legitimate state interest." *Id.* ¶ 66.

In this case Hodge and Rogers allege that the fundamental right that is implicated is the right to petition the government for redress of grievances. The right of petition that they contend has been infringed is Frye Island's right to petition for withdrawal from MSAD 6.

The first problem with that argument is that L.D. 500 applies to Frye Island, not to plaintiffs. Hodge and Rogers retain their right to petition the government for redress of grievances. They can petition the Legislature to repeal L.D. 500. They can petition the Executive Branch to support a repeal of L.D. 500. And they can petition the courts for redress of their grievances by challenging the constitutionality of L.D. 500 – exactly as they are doing in this action.

The second problem with plaintiffs' right of petition claim is that the Law Court has held that there is no requirement under the Maine Constitution for the submission of the formation of school districts to a popular vote. *McGary v. Barrows*, 156 Me. 250, 262, 163 A.2d 747, 754 (1960). It has also ruled that "[i]t is within the power of the Legislature to divide or join towns into school districts as it pleases." *Inhabitants of the Town of North Berwick v. State Board of Education*, 227 A.2d 462, 468 (Me. 1967). Those rulings are fatal to any argument that the citizens of Frye Island have a fundamental right to seek withdrawal from MSAD 6 notwithstanding the statutory prohibition placed by L.D. 500.

That leaves the question of whether L.D. 500 survives rational basis scrutiny as "reasonably related to a legitimate state interest." *Doe v. Williams*, 2013 ME 24 ¶ 66. In the court's view, any contention that L.D. 500 does not have a rational relationship to a legitimate state interest is foreclosed by the Law Court's 2008 *Frye Island* decision. In that case the Law Court upheld legislation exempting MSAD 6 from a new cost allocation formula that would have reduced Frye Island's contribution to MSAD 6 to "zero dollars." 2008 ME 27 ¶ 7.

6

Specifically, after noting that the challenged legislation did not involve a fundamental right, the Court held that legislation addressing a potential shortfall in the MSAD 6 budget was rationally related to the legitimate state interest of financing public education. 2008 ME 27 ¶¶ 15-17.

Frye Island's withdrawal would similarly reduce its contribution to MSAD 6 to zero dollars. In preventing such a withdrawal, L.D. 500 is rationally related to the legitimate state interest of financing public education and therefore survives rational basis scrutiny.

Plaintiffs' substantive due process challenge therefore fails to state a claim upon which relief may be granted.


Emergency Clause

Under the Maine Constitution enacted legislation ordinarily becomes effective 90 days after the adjournment of the legislative session. Me. Const. art IV, pt. 3, § 16. To allow for the passage of legislation that cannot wait for 90 days after adjournment, Article IV, pt. 3 § 16 provides that the Legislature can pass emergency legislation with the facts constituting the emergency stated in the preamble. Article IV pt. 3 § 16 further provides

> An emergency bill shall include only such measures as are immediately necessary for the preservation of the public peace, health or safety; and shall not include (1) an infringement of the right of home rule for municipalities . . . .

In the companion case this court has twice addressed the Home Rule issue and has concluded that L.D. 500 does not infringe Frye Island's Home Rule authority. *See MSAD 6 v. Inhabitants of Frye Island*, No. CV-18-008, 2018 Me. Super. LEXIS 112 *3 (June 26, 2018); Order filed April 30, 2019 in CV-18-008 at 8.

Accordingly, plaintiff's Emergency Clause claim is subject to the rule that a reviewing court is limited to determining whether the legislature has expressed a fact that can constitute an emergency within the meaning of the Maine Constitution. *Morris v. Goss*, 147 Me. 89, 98-99, 83

7

A.2d 556, 561 (1951). The court may not review whether the fact expressed in the emergency preamble actually existed or did constitute an emergency. *Id.*

L.D. 500 was enacted effective April 11, 2001. The Law Court noted in its 2008 decision that this was less than a month after Frye Island had sought to invoke the procedure for withdrawal from MSAD 6 under the provisions of then-existing 20-A M.R.S. § 1405 by submitting a draft withdrawal agreement to the Department of Education and to MSAD 6. *See* 2008 ME 27 ¶ 5.

In pertinent part the emergency preamble to L.D. 500 states:

> **Whereas,** resolution is needed prior to June 30, 2001 of the issue of membership of School Administrative District 6 for purposes of both the provision of educational services for students from the Town of Frye Island and clarification of the valuation for school funding purposes; and
>
> **Whereas,** in the judgment of the Legislature, these facts create an emergency within the meaning of the Constitution of Maine and require the following legislation as immediately necessary for the preservation of the public peace, health and safety . . .

P. & S 2001, ch. 8.

Because of Frye Island's pending application to withdraw and the fact that MSAD 6's fiscal year would begin on July 1, 2001, resolution of the financial problem that would be caused by Frye Island's withdrawal could not wait until 90 days after the legislature adjourned.[6] This constituted an adequate factual basis to justify emergency legislation. *See Verrill v. Secretary of State,* 1997 ME 82 ¶ 7, 693 A.2d 336 (finding emergency legislation justified by fiscal emergency).

Although the potential disruption that would be caused to the MSAD 6 budget by Frye Island's withdrawal is not explicitly spelled out in the preamble, the legislative judgment to that

8

effect is implicit, and the Law Court has found that implicit legislative judgments of that nature are entitled to deference under the Emergency Clause. *State v. Eaton*, 577 A.2d 1162, 1165 (Me. 1990).

Plaintiffs' challenge under the Emergency Clause fails to state a claim on which relief may be granted.

Right to Petition for Redress of Grievances

Plaintiffs' claim that L.D. 500 infringes their right to petition for redress of grievances has already been addressed above. The right to petition addresses state action interfering with access to the legislature, the executive branch, and the courts.

As noted above, nothing in L.D. 500 prevents Hodge and Rogers from petitioning the legislature to enact legislation allowing Frye Island to withdraw from MSAD 6. Nothing prevents them from seeking to enlist the Executive Branch to support that effort. Nothing has prevented them from initiating litigation to invalidate L.D. 500.

The Town of Frye Island does not have an independent constitutional right to petition for redress of municipal grievances, and the right to petition for redress of grievances does not extend to whether a town may invoke an administrative procedure for realignment of school districts.

Plaintiffs' contention that L.D. 500 violates their right to petition for redress of grievances fails to state a claim on which relief may be granted.

---

[6] In 2001 the First Regular Session of the Legislature adjourned on June 22, 2001, and non-emergency legislation therefore did not become effective until September 21, 2001, almost three months into the fiscal year.

9

Equal Taxation

Article IX § 8 of the Maine Constitution provides that "[a]ll taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof." To prevail on a claim for a violation of the right to equal taxation, a plaintiff must demonstrate that property has not been assessed "at a relatively uniform rate to all comparable properties in the district." *Roque Island Gardner Homestead Corp. v. Town of Jonesport*, 2017 ME 152 ¶ 13, 167 A.3d 564. Hodge and Rogers do not allege that their property is assessed at a higher rate than similarly situated properties in Frye Island or MSAD 6. Their challenge based on Art. IX § 8 fails to state a claim on which relief may be granted.

The entry shall be:

Defendant's motion to dismiss is granted. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: May _20_, 2019

_____
Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 5/23/19

MC

10